## Bruce Appeal

*Edward G. Kuyat, Jr.,* for Commonwealth.
*Fremont J. McKenrick,* for appellant.

McDONALD, J., September 12, 1966.—This matter is before the court on appeal of Patrick J. Bruce, a licensed hunter, from revocation of his license for a period of two years under the Act of June 3, 1937, P. L. 1225, art III, sec. 315(3)(a), as amended, 34 PS §1311.315, as amended. In accordance with subsection (6) of section 315 of the act, the commission filed with the prothonotary a certified record of the complete proceeding and resolution of the board, which cites the provisions of the act without detailing any of the evidence upon which the commission acted.

Petitioner was charged with killing a second deer on December 14, 1965, and upon advice of counsel voluntarily paid the fine and costs. He was subsequently notified that his hunting and trapping privileges were revoked for the above period as a result of this offense.

Subsection (6) of section 315 of the above act provides: "The matter shall be heard de novo by a judge or judges of the court, without a jury". Petitioner may offer testimony of mitigating circumstances. There is no doubt a voluntary payment of fine and costs is evidence of the violation. However, it is not conclusive and does not foreclose an inquiry into defenses and the guilt of the violation underlying the revocation. If it did, it would be fruitless for anyone to appeal from a revocation after having been adjudged guilty upon trial before a magistrate, or, as here, having voluntarily made

payment of fine and costs when charged with an offense under the game laws. In such case, this court would be powerless to review the discretion of the commission. We conclude, under the mandate of the legislature, that the hearing shall be de novo, this court may make a judicial review of the ex parte administrative decision of the commission, and change the penalty to fit the violation, if any: Pennsylvania Game Commission v. Long, 14 Cumb. 94, affirmed, 413 Pa. 303.

The testimony revealed that on the above date, petitioner fired at an albino doe and saw it fall. Advancing to it, he thought it was still alive and, after tapping it with his foot, it rose and began to move away, staggering as though wounded. He then observed, at a distance of about 10 yards, a brown doe which was struggling on its forefeet and appeared to be seriously wounded. At that time, believing the albino also was wounded because it did not run away as it normally should have, he shot and killed it. Observing the brown doe was apparently paralyzed in its rear portion, and frantically pawing the ground, he shot and killed it. Another hunter whom he identified as "Costello", but whom he has not seen since, arrived and wanted to take the brown deer. He refused to give it up. After Costello had gone, he began to cover the brown deer with leaves to disguise it from other hunters, intending then to seek out a game warden. While so engaged, Cloyd W. Hollen, an employe of the Fish Commission, came upon him, and petitioner asked what should be done when two deer were hit with one shot. Mr. Hollen notified Paul Miller, a game protector, who was nearby.

Mr. Miller, upon examining the deer, found the albino had died from a neck wound, but it also had a fresh bullet hole through the ear. The brown doe had two bullet wounds in the neck and shoulder area. He confirmed the deer was partially covered with leaves, and also that it had been dragged a distance of about

10 feet from a point where the paw marks on the ground indicated it had been shot. In his opinion, this deer had not been shot with a bullet which had penetrated through and exited from another deer. In such case, the entry of that bullet would have caused a larger wound than either of those which were observed on the brown deer.

Mr. Miller testified petitioner was highly excited and seemed confused and baffled by the appearance of two deer after he had shot at only one. He also related the incident of the other hunter who appeared immediately after the shooting and wanted to take the deer. Thus, his explanation for camouflaging the deer seems to be a reasonable one in view of the circumstances.

We conclude petitioner's first shot passed through the ear of the albino and seriously wounded the brown doe. When the albino, upon arising, reacted in an abnormal way, it was reasonable to assume it had been wounded. Without ascertaining the extent of injury to the brown doe, he shot and killed the albino. This was, at most, an error of judgment, and at that time he had not killed nor attempted to kill two deer in one season. By analogy, it appears petitioner was confronted by a series of circumstances similar to those to which we apply the sudden emergency rule in tort law. That this judgment, by hindsight, should now have proven faulty is no reason why, under the circumstances, he did not act in a normal and reasonable manner. However, after turning his attention to the brown doe, and noting its apparent serious wound, which may have been mortal, he dispatched it. This was a humane act and certainly not the wilful, intentional killing of a second deer contemplated under section 705 of the Game Laws.

Petitioner, a licensed hunter for 11 years, had never before killed a deer. He has no previous violations. His instant judgment under the stress of excitement of the

moment was, as it now develops, erroneous, but in our view justified by the scene as he came upon the two deer. We conclude he paid the fine and costs under a mistake of law and fact. There is not sufficient evidence of guilty intent to support a conviction under section 705.

It is apparent, as he explained, and he impresses us with his truthfulness, if he had wanted to avoid all suspicion he could have reported the matter to a game warden in the area without first killing the brown doe which was seriously wounded and threshing about in the agony of a slow death. That he performed a humane act, which under the circumstances was justified, should not now expose him to the penalty of a revocation.

We, therefore, believe the Game Commission erred in revoking petitioner's license.

### ORDER

Now, September 12, 1966, after hearing in the above entitled case, and upon consideration of the testimony and briefs, the order of the Game Commission of Pennsylvania revoking the hunting and trapping license of the above named petitioner, Patrick J. Bruce, is vacated and set aside.